**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINA REISE, *et al.*, | ) | |
| Individually and on behalf of others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-01335-SEP |
| | ) | |
| CITY OF CALVERTON PARK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT
CLASSES, NAMING OF CLASS REPRESENTATIVES, APPOINTMENT OF CLASS
<u>COUNSEL, AND PERMISSION TO DISSEMINATE CLASS NOTICE</u>**

## **TABLE OF CONTENTS**

PAGE(S)

I.  INTRODUCTION ..................................................................................................1
II. BACKGROUND AND PROCEDURAL HISTORY .........................................1
III. THE TERMS OF SETTLEMENT......................................................................3
    A.  The Classes ...............................................................................................3
    B.  Benefits to the Classes ..............................................................................4
        1.  Monetary Benefits ..........................................................................4
        2.  Additional Consideration and Relief ...............................................6
    C.  Class Member Releases ..............................................................................7
    D.  Class Notice and Settlement Administration .............................................7
    2)  Opt-Outs and Objections ...........................................................................9
    3)  Attorneys' Fees and Service Awards .......................................................10
IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...............11
    A.  The Settlement is fair ..............................................................................13
    B.  The Settlement is adequate ......................................................................16
    C.  The Settlement is reasonable and treats class members equitably ...........17
    D.  Counsel and Parties believe that the Settlement is fair and reasonable ...............18
V.  THE PROPOSED CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT
    PURPOSES .......................................................................................................19
    A.  The Proposed Classes Satisfy the Rule 23(a) Requirements for Certification of a
        Settlement Class.......................................................................................20
        1.  Numerosity is satisfied.................................................................20
        2.  Commonality is satisfied..............................................................21
        3.  Typicality is satisfied ..................................................................23
        4.  Adequacy is satisfied ..................................................................25
        5.  The Rule 23(b)(3) requirements are satisfied ..............................25
    B.  The Court should approve the proposed form and method of Class Notice. .........29
        1.  The proposed Class Notice provides for the best notice practicable under
        the circumstances. .......................................................................29
        2.  The proposed form of Class Notice adequately informs Settlement Class
        Members of their rights..............................................................30
VI. CONCLUSION..................................................................................................31

## I.    INTRODUCTION

Christina Reise, Michael White, Sharon Jones, Alan Miller, and Jessica Smith, on behalf of themselves and all others similarly situated ("Class Representatives" or "Plaintiffs"), seek preliminary approval of a proposed Settlement of claims against Defendants City of Calverton Park and Sean Gibbons (each a "Defendant," and together "Defendants")[1] arising out of the City of Calverton Park's (the "City") unconstitutional practice of towing vehicles from private property for alleged violations of a municipal nuisance ordinance.

The Settlement Agreement, if approved, will establish a non-reversionary common fund of $465,000. After payment of fees and costs, including Class Representative Service Awards, all available funds will be distributed by check to the Settlement Class.[2] Members of the Tow Class and Special Tax Bill Class are entitled to a cash payment, as described in the Settlement Agreement and summarized below. In addition, the Settlement provides meaningful additional relief by amending the City's ordinances related to towing parked vehicles from private property, pre- and post-deprivation hearings, and assessment of Special Tax Bills.

Plaintiffs and Class Counsel believe that the Settlement is fair, reasonable, and adequate. Plaintiffs respectfully request that this Court preliminarily approve the Settlement, certify the Tow Class and Special Tax Bill Class for settlement purposes only, appoint Class Counsel, name Class Representatives, and order that Notice be distributed to the Settlement Class.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On October 23, 2023, Plaintiffs filed their Class Action Complaint asserting claims against Defendants under 42 U.S.C. § 1983. *See* Doc. 001. Plaintiffs alleged that Defendants deprived Plaintiffs of their vehicles without a hearing or an opportunity to be heard, in violation of the

---

[1] Collectively, Plaintiffs and Defendants constitute the "Parties."

[2] All capitalized terms have the same meaning as used in the Parties' Settlement Agreement. *See* **Exhibit 5**, Settlement Agreement.

Fourteenth Amendment (Count I). Plaintiffs further alleged that the administrative warrants Defendant Sean Gibbons relied on to seize their vehicles were insufficiently particular (Count II) and omitted material information (Count V). The complaint also challenged Defendants' assessment of Special Tax Bills by alleging that the Special Tax Bills, ostensibly calculated to recoup costs associated with the tow, in fact bore no rational relation to any expense the City incurred in seizing the vehicle, in violation of the Fourteenth Amendment (Count III), and amounted to an excessive fine or fee, in violation of the Eighth Amendment (Count IV).

The City moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 015. Before an order was issued on that motion, Plaintiffs filed an amended complaint (the Complaint), Doc. 021, and this Court denied the City's motion as moot, Doc. 022. The Complaint included an additional claim alleging that Defendants violated Plaintiffs' Fourteenth Amendment substantive due process rights by towing vehicles parked on private property which presented neither health nor safety hazard (Count VI).

The Parties proceeded with extensive discovery, which included interrogatories, multiple requests for production on both sides, depositions of nine parties and witnesses, as well as numerous meet-and-confers and demand letters issued between Class Counsel and Defendants' Counsel. Ex. 7, Declaration of Blake Strode (Strode Decl.) ¶ 7.

On June 26, 2025, the Parties engaged in a day-long mediation before Mr. Bradley A. Winters, Esq., of JAMS. *See* Settlement Agreement ¶ 4. Class Counsel entered the mediation fully informed of the merits of Class Members' claims and were prepared to continue to litigate and try the case rather than accept a settlement that was not in the Plaintiffs' and the Classes' best interests. *Id.* ¶ 125; Ex. 7, Strode Decl. ¶ 6.  Mr. Winters actively supervised and participated in the settlement discussions to help the Parties reach an acceptable compromise. Settlement Agreement ¶ 4. After over eight hours of hard-fought negotiations, the Parties reached an agreement on all

material terms, including the amount of the Settlement Fund and additional relief for the Classes. *Id*. Class Counsel prepared the first draft of the Settlement Agreement, and the Parties then negotiated the precise terms and language of the Agreement now before the Court. Ex. 7, Strode Decl. ¶ 8.

On July 7, 2025, the Parties filed a Notice of Settlement in Principle and Request for Stay, where the Parties notified the Court of the June 26 mediation and resolution and requested that all proceedings be stayed. Doc. 042. The Court granted the stay and allowed the Parties ninety days to file a motion for preliminary approval. Doc. 043.

The Parties have concluded that Settlement is desirable to avoid the time, expense, and inherent uncertainties of defending prolonged litigation and to resolve finally and completely all pending and potential claims relating to the conduct alleged in the litigation. The Parties further believe this Settlement Agreement offers significant benefits to all Class Members and is fair, reasonable, adequate, and in the best interest of the Classes.

## III.    THE TERMS OF SETTLEMENT

### A.  The Classes

The Settlement resolves the claims of the classes (each a "Class" or "Settlement Class" and collectively the "Classes" or "Settlement Classes"), for which the Parties seek certification for settlement purposes only under Federal Rule of Civil Procedure 23(b)(3): the Tow Class and Special Tax Bill Class. Settlement Agreement ¶¶ 13, 23, 38 41.

> **Tow Class:** All persons whose vehicles were seized and towed from private property at the direction of the City of Calverton Park between September 25, 2018, and June 26, 2025, due to an alleged violation of a municipal nuisance ordinance, whether those persons were able to recover their vehicle from the tow lot or not.
>
>> **Recovered Vehicle Subclass** (a subclass of the Tow Class)**:** All members of the Tow Class who recovered their vehicles from the tow lot.

**Non-Recovered Vehicle Subclass** (a subclass of the Tow Class): All members of the Tow Class who did not recover their vehicles from the tow lot.

**Special Tax Bill Class:** All persons who paid an abatement fee, called a Special Tax Bill, associated with a vehicle towed between September 25, 2018, to June 26, 2025, at the direction of the City of Calverton Park due to an alleged violation of a municipal nuisance ordinance

Plaintiffs Christina Reise, Alan Miller, and Jessica Smith seek to be appointed as class representatives for the Recovered Vehicle Subclass, and Plaintiff Michael White seeks to be appointed as class representative for the Non-Recovered Vehicle Subclass. Plaintiffs Sharon Jones, Christina Reise, and Michael White seek to be appointed as class representatives for the Special Tax Bill Class.

### B. Benefits to the Classes

#### 1. Monetary Benefits

The Settlement Agreement provides monetary benefits in the form of a non-reversionary Settlement Fund of $465,000. Approximately $418,500 shall be allocated to the Tow Class (which, by definition, includes all members of its subclasses) (divided as $259,470 and $159,030 between the "Recovered Vehicle Subclass Settlement Fund" and "Non-Recovered Vehicle Subclass Settlement Fund," respectively) and approximately $46,500 shall be allocated to the Special Tax Bill Class (the "Special Tax Bill Class Settlement Fund"). *Id.* ¶¶ 24, 38, 52. Each member of the Tow Class and Special Tax Bill Class who has not opted out of the Settlement and who submits a valid claim will receive a cash payment. *Id.* ¶ 47.

#### a. Recovered Vehicle Subclass Settlement Fund

The Recovered Vehicle Subclass Settlement Fund—that is, the $259,2470 allocated to the Recovered Vehicle Subclass minus proportional deductions for (a) Court-approved attorneys' fees and costs awarded to Class Counsel, (b) any Settlement Administration Costs, and (c) any Court-approved Service Awards to the Class Representatives, *id.* ¶ 38—shall be

distributed to members of the subclass using the calculation described in Paragraph 106.d.iii of the Settlement Agreement:

1. Calculate the sum of all fees paid by the Recovered Vehicle Subclass Members to release their vehicles from the tow lot, including the Release Fee paid to Calverton Park and the towing and storage fees paid to the tow company.

2. Subtract the dollar amount calculated in (1) from the Recovered Vehicle Subclass Settlement Fund.

3. Divide the number calculated in (2) by the total number of days that all vehicles spent in the tow lot, subject to the thirty-day cap described in the Settlement Agreement. This yields a per-towed-day amount.

4. Multiply the per-towed-day amount by the total number of days each member's vehicle was towed. Add to this amount the total number of release, storage, and tow fees that the class member paid.

5. This results in a Recovered Vehicle Subclass Member payment.

### b.  Non-Recovered Vehicle Subclass Settlement Fund

The Non-Recovered Vehicle Subclass Settlement Fund—that is, the $159,030 allocated to the Non-Recovered Vehicle Subclass minus proportional deductions for (a) Court-approved attorneys' fees and costs awarded to Class Counsel, (b) any Settlement Administration Costs, and (c) any Court-approved Service Awards to the Class Representatives, *id.* ¶ 24—shall be distributed to the members of the Non-Recovered Vehicle Subclass using the calculation described in Paragraph 106.d.iv of the Settlement Agreement:

1. Divide the Non-Recovered Vehicle Subclass Settlement Fund by the number of persons who never recovered their vehicles.

2. This results in a Non-Recovered Vehicle Class Member Payment for each Settlement Class Member in the Non-Recovered Vehicle Subclass.

### c.  Special Tax Bill Class Settlement Fund

The Special Tax Bill Class Settlement Fund—that is, the $46,500 allocated to the Special Tax Bill Class minus proportional deductions for (a) Court-approved attorneys' fees and costs awarded to Class Counsel, (b) any Settlement Administration Costs, and (c) any Court-approved Service Awards to the Class Representatives, *id.* ¶ 52—shall be distributed to the members of the Special Tax Bill Class using the calculation described in Paragraph 106.d.v of the Settlement Agreement:

1. Divide the Special Tax Bill Class Settlement Fund by the total dollar amount of all Special Tax Bills paid, which yields a per-dollar-fined rate.

2. Multiply the per-dollar-fined rate by the total amount charged to and paid by each member of the Special Tax Bill Class.

3. This results in a Special Tax Bill Class Member Payment for each Settlement Class Member in the Special Tax Bill Class.

### d. Total Settlement Class Member Payments and Residual Funds

A Settlement Class Member may qualify for a Recovered Vehicle Subclass Member Payment, a Non-Recovered Vehicle Subclass Member Payment, a Special Tax Bill Class Payment, or some combination of the three payments. *Id.* ¶ 63. The total of the Recovered Vehicle Subclass Member Payment, Non-Recovered Vehicle Subclass Member Payment, and/or Special Tax Bill Class Payment due to each Settlement Class Member is the total Settlement Class Member Payment. *Id.* ¶ 106.d.vi.

The Settlement Agreement also sets out a specific procedure for disposition of any residual funds, including a procedure for a secondary distribution and a proposed *cy pres* recipient, Cars 4 Missouri. *Id.* ¶¶ 108–09. In no event shall any portion of the Settlement Fund revert to Defendants. *Id.* ¶ 112.

### 2. Additional Consideration and Relief

In addition to the monetary relief, the Settlement Agreement provides that the City shall amend Section 215.010(B)(28) of the City of Calverton Park Municipal Code to remove the

following phrase from the description of vehicles constituting a nuisance: "or which vehicle or automobile is not properly licensed and registered with a current license play displayed on the vehicle and with a proper current vehicle registration in possession of the person in charge of the property upon which the vehicle or automobile is located." *Id.* ¶ 66.

Defendants further agree to amend Section 215.040 of the City of Calverton Park Municipal Code to reflect the following changes to the pre- or post-deprivation hearings for derelict vehicles: the Code Enforcement Officer that issued nuisance violation tickets shall no longer preside as the Hearing Officer at such hearing. *Id.* ¶ 67. The Mayor or Board of Aldermen shall designate another person—including but not limited to the Mayor or a Board member—to serve as a Hearing Officer in such hearings. *Id.* ¶ 67.

Additionally, Defendants agree that no Special Tax Bill assessed for towing a derelict vehicle from private property shall exceed $200.00. *Id.* ¶ 68.

### C.  Class Member Releases

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released the Released Parties from "any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period as described in the Complaints in this Action that were or could have been alleged in the Action." *Id.* ¶ 113. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the Complaint.

### D.  Class Notice and Settlement Administration

Subject to Court approval, the Settlement Administrator is Atticus Administration LLC ("Atticus"), a qualified and experienced settlement administrator. Exhibit 6, Declaration of Bryn Bridley ¶¶ 2–4 (Bridley Decl.). Under the Parties' supervision, Atticus will issue Notice, receive exclusion requests, respond to inquiries, issue settlement checks, and conduct other activities relating to Class Notice and Settlement Administration. *Id.* ¶¶ 5–13; Settlement Agreement at Sec. VII. As set forth in detail in Sections VII and VIII of the Settlement Agreement, the Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law, and shall otherwise be in the manner and form approved by the Court. Subject to Court approval, Notice will be accomplished as set forth in Section VIII of the Settlement Agreement.

The Notice shall include, among other information: description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement; a date by which Settlement Class members may object to the Settlement; the location and date of the Final Approval Hearing; and the address of the Settlement Website at which Settlement Class members may access the Settlement Agreement, and other related documents and information. *See id.* ¶¶ 7, 22, 33. Class Counsel and Defendant shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court.

Notice shall be provided to members of the Tow Class and Special Tax Bill Class in three different ways: (a) Postcard Notice, (b) Long Form Notice with greater detail than the Postcard Notice, and (c) Publication Notice. *Id.* ¶ 27. The details of these notices are included in the Settlement Agreement. *See id.* ¶¶ 22, 33, 36, 74.

The Postcard Notice shall be mailed to potential members of the Tow Class and Special Tax Bill Class by first class United States mail to the best available mailing addresses. *Id.* ¶¶ 73,

75. Class Counsel shall provide the Settlement Administrator with last known mailing addresses for these members. *Id.* ¶ 76. The Settlement Administrator shall run the names and addresses through the National Change of Address Registry and update as appropriate. *Id.* Additionally, the Settlement Administrator shall use standard skip tracing devices to obtain forwarding address information and, if the skip tracing yields a different forwarding address, shall mail the Postcard Notice to the forwarding address. *Id.* If a mailed Postcard Notice is returned with new forwarding address information, the Settlement Administrator shall re-mail the Postcard Notice to the new forwarding address. *Id.* The Postcard Notice shall inform Settlement Class members how they may request a copy of the Long Form Notice. *Id.* ¶ 75.

Publication Notice of the Settlement Agreement shall be made through print publication in the *St. Louis American* and by posting a one-page Notice of the Settlement at Calverton Park City Hall. *Id.* ¶¶ 78, 80. The Publication Notice shall inform Settlement Class members how they may request a copy of the Long Form Notice. *Id.* ¶¶ 78, 80.

The Settlement Administrator shall also, by the terms of the Settlement Agreement, maintain a database showing mail addresses to which each Notice was sent and any Notices that were not delivered. *Id.* ¶ 81. In addition to weekly updates to the Parties regarding the progress of the Notice Program and the declaration or affidavit by the Settlement Administrator in advance of the Final Approval Hearing and in support of the motion for Final Approval, the Settlement Administrator shall provide a summary report of the Notice Program to the Parties three days prior to the Final Approval Hearing. *Id.* Finally, the database maintained by the Settlement Administrator regarding the Notices shall be available to the Parties and the Court upon request. *Id.*

### 2) Opt-Outs and Objections

The Class Notice will advise Settlement Class members of their right to opt-out of the Settlement or to object to the Settlement Agreement. *See id.* ¶¶ 7, 22, 33.

Settlement Class members may opt-out of the Settlement by mailing a written request to the Settlement Administrator by the Opt-Out Date. *Id.* ¶ 90. Only Class Members who have submitted a Valid Claim may object to the Settlement. *Id.* ¶ 96. Settlement Class members who do not opt-out may object to the Settlement by filing with the Court and serving upon counsel for the Parties a written notice of objection by the Objection Date. *Id.* ¶ 98. Any Objection submitted to the Court by mail must be postmarked no later than the Objection Date. *Id.* ¶ 97. Written objections must include: (a) the name of the Action; (b) the objector's full name, address, and telephone number; (c) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (d) a statement confirming whether the objector or any counsel for the objector intends to personally appear and/or testify at the Final Approval Hearing; and (e) the objector's signature, with any documents the person wishes to be considered in support of the objection. *Id.* ¶¶ 97, 99. Settlement Class Members or their attorneys intending to make an appearance at the Final Approval Hearing must, no later than fifteen days prior to the Final Approval Hearing, file with the Court and serve upon Class Counsel and Defendants' Counsel a notice of Intention to Appear. *Id.* ¶ 99.

### 3) Attorneys' Fees and Service Awards

Class Counsel have not been paid for their extensive efforts nor reimbursed for costs incurred. The Settlement Agreement contemplates an award of reasonable attorneys' fees to Class Counsel in the amount of $139,600—which is approximately 30 percent of the total Settlement Fund—plus reimbursement of litigation costs in the amount of $15,398.36 (for a total of $154,998.36). *Id.* ¶ 106(a). Any approved award of attorneys' fees and costs will be paid from the Settlement Fund prior to the distribution of payments to the Settlement Class Members. *See id.*

Class Counsel will also petition the Court for approval of Service Awards to Class Representatives not to exceed the amount of $8,000 each. *Id.* ¶ 106(b). Defendants have agreed not to oppose Plaintiffs seeking approval from the Court for that amount. *Id.* ¶ 117.

The Parties negotiated and reached agreement regarding attorneys' fees and costs and the Service Awards only after reaching agreement on all other material terms of this Settlement. *Id.* ¶ 118.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"The law strongly favors settlements. Courts should hospitably receive them." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997) (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). "Class actions, in general, place an enormous burden of costs and expense upon [ ] parties." *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (quotation omitted). Settlement avoids protracted litigation and conserves resources. *See In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (expense of continued litigation "weigh[s] in favor of" approving settlement).

At the preliminary-approval stage, the Court should "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms[.]" *Manual for Complex Litig.* § 21.633 (4th ed.) (hereafter "*Manual*"). The Eighth Circuit "begin[s] with the guiding principle that a class action settlement is a private contract negotiated between the parties." *Marshall*, 787 F.3d at 509 (quotation omitted). "The court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* (quotation omitted). A settlement agreement is valid where "the settlement was reached through mediation with a third-party neutral, and only

after substantial discovery had taken place." *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016).

Under Federal Rule of Civil Procedure 23(e), a class action settlement is proper when the following factors are satisfied:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Other relevant factors include "defendant's financial condition," *Risch v. Natoli Eng'g Co., LLC*, 2012 WL 3242099, at *2 (E.D. Mo. Aug. 7, 2012) (quotation omitted), "the existence of fraud or collusion behind the settlement," "the stage of the proceedings and the amount of discovery completed," and "the opinions of the class counsel, class representatives, and absent class members," *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:11CV01691 AGF, 2013 WL 4855308, at *3 (E.D. Mo. Sept. 11, 2013). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

Approval of a class action settlement involves a two-step process. The court first makes a preliminary fairness evaluation. *See Manual* § 21.632. If the preliminary evaluation does not disclose grounds to doubt fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court directs that notice be given to class members and sets a fairness hearing, at which arguments and evidence may be presented in support of or against the

settlement. *Id.* § 21.633; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The notice should tell class members how to make their views known to the court. *Manual* § 21.633. Under this framework,

> the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase.

*Newberg on Class Actions* § 13:13 (5th ed.) (citing cases).[3] Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n - E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).

Here, the Classes were adequately represented by the Class Representatives—who do not have any conflicts with the Classes—and by experienced Class Counsel. The settlement negotiations occurred at arms' length before an experienced mediator and after the close of significant discovery. The recovery to the Classes is readily within the range of approval, particularly in light of the substantial risks of trial and the costs associated with further litigation. And the Settlement treats Class members equitably relative to each other. Therefore, the proposed Settlement satisfies the standards for preliminary approval and warrants the dissemination of notice apprising Class Members of their opportunity to opt in, opt out, or object to the Settlement.

**A.  The Settlement is fair**

First, the Settlement Agreement is the product of arms' length negotiations between the Parties, culminating in the successful mediation on June 26, 2025, with the active participation of a neutral mediator, Mr. Bradley Winters. During the mediation, Mr. Winters actively supervised

---

[3] At the conclusion of the Notice period, and after any objections have been resolved, this Court will address whether final approval is warranted.

and participated in the settlement discussions to help the Parties reach an acceptable compromise. This factor weighs in favor of granting preliminary approval *See* Fed. R. Civ. P. 23(e)(2)(B); *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1178 (8th Cir. 1995) ("It also warrants mention that a Magistrate Judge presided over the settlement negotiations and that the district court had prior experience with this type of litigation. Such multiple layers of scrutiny further militate in favor of the settlement and against [objectors'] claims of collusion."). The Parties then spent additional months working out the fine details of the agreement in principle reached during mediation. Ex. 7, Strode Decl. ¶ 8; *Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (approving settlement that was "a product of extensive negotiation conducted over a period of several months and requiring the services of a mediator"). The absence of problematic settlement terms, such as reversion of funds to the defendant, further indicates a lack of collusion. *Rouse v. Language Line Servs.*, *Inc.*, No. 4:22-CV-0204-DGK, 2023 WL 6200072, at *4 (W.D. Mo. Sept. 22, 2023) (discussing concerns with reversion provisions).

Second, the Classes were adequately represented by Class Representatives and experienced Class Counsel, who are well-informed about the merits and risks of the case and who litigated zealously on behalf of the Classes. *See* Fed. R. Civ. P. 23(e)(2)(A). Prior to the settlement, the Parties engaged in extensive discovery, including depositions conducted by both parties, as well as multiple rounds of Interrogatories and Requests for Production, and several rounds of demand letters by Class Counsel. In addition, ArchCity Defenders has extensive experience litigating complex civil rights matters in federal court. Ex. 7, Strode Decl. ¶ 5. Courts give "'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.'" *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (quoting *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987)).

The Class Representatives are adequate representatives because they entirely share their classmates' interests in establishing the illegality of Defendants' policies and practices concerning vehicle towing. *See* Section V.A.4, *infra*. Their injuries arise from policies and practices to which all Class Members were subjected, and their legal challenges to Defendants' policies are shared among the members of the Settlement Classes. *See id.* There are no known material conflicts as to this case among Class Members, all of whom have a similar interest in vindicating their constitutional rights. *See id.*

Third, there is no question that discovery in this case is "to a point at which an informed assessment of its merits and the probable future course of the litigation can be made." *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1334 (E.D. Mo. 1995). The Parties completed fact discovery, which consisted of the depositions of nine parties and witnesses—including the Mayor of Calverton Park, former police chiefs and code enforcement officers, a long-tenured member on the Board of Alderman and City Treasurer, and a former City Clerk—issued and answered multiple Requests for Production and Sets of Interrogatories, reviewed thousands of pages of documents, and exchanged multiple demand letters informed by extensive research. Ex. 7, Strode Decl. ¶ 7.

Fourth, the terms of the proposed award of attorneys' fees and costs and Service Awards are also fair and demonstrate that the Settlement is the product of arms' length negotiation. These terms were negotiated only after the Parties reached agreement on all other material terms of the Settlement. Settlement Agreement ¶ 118. In light of the substantial time and resources invested by Class Counsel, an award of attorneys' fees in the amount of roughly 30 percent of the Settlement Fund and litigation costs of $15,398.36 is fair and reasonable. *Id.* ¶ 106(a). The Settlement Agreement also contemplates a Service Award of up to $8,000 for each Class Representative. *Id.* ¶ 106(b). Class Members will have an opportunity to review these requests and challenge them at the Final Approval Hearing. Importantly, the Court's failure to approve,

15

in whole or in part, any award of attorneys' fees or the requested Service Awards "shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination." *Id.* ¶ 115.

### B. The Settlement is adequate

As the Eighth Circuit has explained, "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508; *see* Fed. R. Civ. P. 23(e)(2)(C). The Settlement here provides for substantial monetary relief of $465,000 to the Rule 23(b)(3) classes, as well as additional valuable relief and consideration. This amounts to a sizeable recovery in a constitutional class action of this size.

By contrast, the risks of continued litigation are substantial. Plaintiffs are pursuing class claims for Fourth, Eighth, and Fourteenth Amendment violations under Section 1983. While Plaintiffs believe that they would ultimately prevail on those claims, they are cognizant that continued litigation entails non-trivial legal risks. Plaintiffs face risks that summary judgment could be granted against them, that they will not prevail at trial, or that Defendants would appeal a trial judgment. Defendants are represented by able counsel who would present a vigorous defense. And, even if Plaintiffs prevail on liability, a jury might not award Plaintiffs and the Classes the full amount of requested damages. This case thus carries significant risks for all Parties and would consume a great deal of time and expense if litigated to the end.

In short, "[t]he possibility of a large monetary recovery through future litigation is highly speculative, and any such recovery would occur only after considerable additional delay." *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011). The Parties naturally dispute the strength of the Plaintiffs' case, and the Settlement Agreement reflects the Parties' compromise, weighing the likelihood of various potential outcomes. In light of the risk and delay of litigation,

weighed against the substantial benefits the Settlement will provide to the Class Members, the proposed resolution is a fair, reasonable, and adequate compromise and should be preliminarily approved. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, Nos. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *10–11 (W.D. Mo. Apr. 20, 2004) ("It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation.").[4]

In sum, the Settlement substantially fulfills the objectives of this action, and provides real relief to Class Members expeditiously, without the cost, risk, or delay of further litigation.

### C.  The Settlement is reasonable and treats class members equitably

The allocation of the Settlement—both among the Classes, and between Settlement Class Members—is fair and reasonable, and treats "class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D). All class members will benefit from changes to the Calverton Park municipal code, most notably the City's promise not to tow vehicles simply due to the registration issues that were the basis for all class members' tows and Special Tax Bills. *See Swinton v. Square Trade, Inc.*, 454 F. Supp. 3d 848, 875 (S.D. Iowa 2020). As to monetary relief, the Settlement Agreement "take[s] into account the interest of the entire class," by allocating relief "commensurate to the value of [the class members'] respective . . . claims." *Swinton v. SquareTrade, Inc.*, No. 4:18-cv-00144,SR-SBJ, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019) (citing *Marshall*, 787 F.3d at 510).

Members of the Special Tax Bill Class are "treated fairly as to one another because they

---

[4] *See also In re Bank America Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) (recognizing it is often "proper to take the bird in hand instead of a prospective flock in the bush."); *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 ("The court 'does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement. . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial.'" (quotation omitted)); *DeBoer*, 64 F.3d at 1178 (at the settlement stage, the court "need not resolve all of the underlying dispute . . . and the value of the settlement need not be determined with absolute precision").

are compensated according to the amount of [Special Tax Bill] they were charged." *Phillips v. Caliber Home Loans, Inc.*, 2021 WL 3030648, at *7 (D. Minn. July 19, 2021). Members of the Recovered Vehicle Subclass are likewise compensated according to the fines and fees they were assessed, *see id.*, and will receive an additional payment made based on each day they were deprived of their vehicle. *Myers v. Iowa Bd. of Regents*, No. 3:19-cv-00081-SMR-SBJ, 2023 WL 7102158, at *8 (S.D. Iowa June 22, 2023) ("The implementation of a pro rata structure for award payouts, which correlates recovery amount to the scope of the injury, supports a settlement being equitable."). The remaining funds will be allocated to the Non-Recovered Vehicle Class, whose members, unlike the Recovered Vehicle class, were permanently deprived of the use and possession of their vehicles, and whose payment will reflect the significance and continuing nature of the injury. *Swinton*, F. Supp. 3d at 875 (finding a settlement equitable where the "differences in the benefits bestowed upon [members of different classes] reflects the differences in their respective injuries and the strength of their respective claims").

The proposed method of distributing relief to the Settlement Class Members is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the Settlement. Ex. 6, Bridley Decl. ¶¶ 2–4. Class Members need only fill out a simple form—either in paper form or electronically through the Settlement website—to submit a claim. *Id.* ¶¶ 11–13. The Settlement Agreement also anticipates that late claims may be filed and provides a process for allowing late claims to be processed. Settlement Agreement ¶ 83. Courts in this District have preliminarily approved similar proposed class action settlements as fair. *See, e.g.*, *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2022 WL 3643669, at *3 (E.D. Mo. Aug. 23, 2022).

**D.  Counsel and Parties believe that the Settlement is fair and reasonable**

"The views of the parties to the settlement must also be considered" as well as the judgments of experienced class counsel. *DeBoer*, 64 F.3d at 1178. Courts give "great weight to and may rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (quotation and citation omitted). The terms of the Settlement here were reached by arms' length negotiation between multiple attorneys familiar with the legal and factual issues of the case and who are well versed in litigating constitutional class actions.

The Parties and their respective counsel, having taken the risks and benefits into consideration, agree that the Settlement provides fair and substantial relief to all Class Members. The amount of the Settlement Fund was reached by negotiation, after the Parties considered the costs and risks attendant to continued litigation, the out-of-pocket expenses initially paid by class members, and the available funds and insurance coverage of the Defendant. The proposed Settlement provides fair and substantial relief, given the significant challenges and risks associated with pursuing such claims through trial and potential appeal.

## V. THE PROPOSED CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Before granting preliminary approval of a settlement in a case where a class has not yet been certified, the Court should determine whether the class proposed for settlement is appropriate under Rule 23. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* § 21.632. "To proceed as a settlement class, the litigation must satisfy the four prerequisites of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). . . . These prerequisites are otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006).[5] Because the proposed Tow Class

---

[5] In certifying a settlement class, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Subclasses and Special Tax Bill Class meet all requirements of Rule 23(a) and, as damages classes, also satisfy the requirements of Rule 23(b)(3), the Parties request this Court provisionally certify the proposed classes for settlement purposes only.

## A. The Proposed Classes Satisfy the Rule 23(a) Requirements for Certification of a Settlement Class

### 1. Numerosity is satisfied

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *Aquila ERISA Litig.*, 237 F.R.D. at 207 (quoting Fed. R. Civ. P. 23(a)(1)). To be impracticable does not mean that joinder must be impossible, but rather, that it would be extremely difficult or inconvenient. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982); *Morgan v. United Parcel Serv. of Am., Inc*., 169 F.R.D. 349, 355 (E.D. Mo. 1996). "Generally, a putative class size of forty or more will support a finding of numerosity, although smaller cases have been found acceptable in this circuit." *Hoekman v. Educ. Minn.*, 335 F.R.D. 219, 242–43 (D. Minn. 2020); *see also Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446, 450 (D. Neb. 2010) ("There is no magic number for proving numerosity, but courts have stated as few as forty class members is sufficient to show joinder is impracticable."). "Although numerosity cannot be based on mere allegations, a party seeking class certification need not show the precise number of members in the class." *Harris*, 270 F.R.D at 450.

The class size alone is not dispositive of the numerosity inquiry. A "court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factors relevant to the practicability of joining all the putative class members." *Paxton*, 688 F.2d at 559–60; *see also Bartle v. TD Ameritrade Holdings Corp*., No. 20-00166-cv-w-BP, 2021 WL 5106459, at *4 (W.D. Mo. Sept. 15, 2021) (relatively low value of individual claims supported a finding that numerosity was satisfied). Also relevant is the financial resources

of potential class members. *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 868 (S.D. Iowa 2018) (collecting cases).

Numerosity is satisfied here across all classes. Based on data and records provided by the City of Calverton Park and the towing company, the Parties have identified there are approximately: 67 members of the Recovered Vehicle Subclass; 41 members of the Non-Recovered Vehicle Subclass, and 108 members of the Special Tax Bill Class. Each of these classes surpass the flexible threshold of forty generally followed in this Circuit. *See Hoekman*, 335 F.R.D. at 242–43. In addition, the relatively low value of many class members' claims (some under $100) and the limited financial resources of many class members further support that joinder of individual suits is impracticable. *See Paxton*, 688 F.2d at 559–60; *Bartle*, 2021 WL 4106459, at *4; *Frazier*, 337 F. Supp. 3d at 868. Numerosity is satisfied.

### 2. Commonality is satisfied

The proposed settlement classes also meet the commonality requirement of Rule 23(a)(2) for settlement purposes, which requires that "there are questions of law or fact common to the class." *Aquila ERISA Litig.*, 237 F.R.D. at 207. "This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in the class action." *Id.* "Commonality may be satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.* (quotations omitted); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2001) (commonality is met where the issues raised have "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (emphasis in original)).

"[T]he presence of differing legal inquiries and factual discrepancies will not preclude class certification." *Glen v. Fairway Indep. Mort. Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010). Courts

have repeatedly found commonality satisfied "as long as members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." *Doran v. Missouri Dep't of Soc. Servs.*, 251 F.R.D. 401, 404 (W.D. Mo. 2008) (emphasis by *Doran* court) (collecting cases).

As Plaintiffs allege that members of the classes were injured by Defendants' general policies and practices for towing vehicles from private property and assessing fines following those tows, commonality is satisfied. *See id.* Issues of fact and law common to all classes include:

**Tow Class.** Common to all members are: (1) whether the City of Calverton Park deprived class members of their vehicles by towing them from private property; (2) whether the vehicles were towed exclusively for alleged violations of the City's municipal nuisance ordinance due to license plate and registration issues; and (3) whether the vehicles were towed without the class member having an adequate opportunity to challenge the towing through a pre- or post-deprivation hearing; and (4) whether the City policymakers knew of this policy, practice, or custom and ratified the conduct or displayed deliberate indifference to the practice. For the Recovered Vehicle Subclass, specifically, common to all is the question of whether the class members paid fees to the City of Calverton Park and the towing company to have their vehicles released. For members of the Non-Recovered Vehicle Subclass, a question common to all members is whether the towing resulted in the permanent deprivation of their vehicle.

**Special Tax Bill Class.** Questions of fact and law common to all members include: (1) whether the class members were issued a Special Tax Bill fee, ostensibly calculated to recoup the specific costs associated with each tow; (2) whether that calculated amount bore any rational relationship to the expenses the City actually incurred in conducting the vehicle seizure; (3) whether the fee was grossly disproportional to the conduct at issue, i.e., allegedly maintaining a

22

vehicle as a nuisance on private property; and (4) whether the class members paid the Special Tax Bill fee.

In short, Plaintiffs allege that they have been affected by Calverton Park's policies related to towing and assessing Special Tax Bills, and those policies are the focus of this litigation. *See Doran*, 251 F.R.D. at 404. Although Plaintiffs allege that all Class Members were affected by the City's policies in the same manner, commonality would not be destroyed even if there were slight distinctions in the policies' application. *See Van Orden v. Meyers*, No. 4:09CV00971 AGF, 2011 WL 4600688, at *7–8 (E.D. Mo. Sept. 30, 2011) ("[N]ot every class member need be affected by a statute, administrative practice, or institutional condition in an identical manner."); *Bouaphakeo v. Tyson Foods Inc*., 765 F.3d 791, 797 (8th Cir. 2014) (factual differences between individual claimants do not preclude class certification when there is evidence of a consistent policy), *aff'd*, 136 S. Ct. 1036 (2016); *DeBoer*, 64 F.3d at 1174 (varying strength of individual claims does not impact commonality). Critically for the commonality analysis, for each of the questions identified, determination of truth or falsity will resolve an issue central to the validity of Plaintiffs' claims. *See Dukes*, 564 U.S. at 350.

### 3. Typicality is satisfied

Plaintiffs also meet the typicality requirement for serving as settlement class representatives. Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class[.]" Fed. R. Civ. P. 23(a)(3). "This subsection simply requires a demonstration that there are other members of the class who have the same or similar grievances as the [class representative.]" *Aquila ERIA Litig*., 238 F.R.D. at 209 (quotation omitted). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174; *Aquila ERISA Litig.*, 237 F.R.D. at 209. Class representatives "need not share identical interests with every class member, but only

'common objectives and legal and factual positions.'" *Claxton*, 2015 WL 3648776, at *3 (quoting *In re Uponor*, 716 F.3d at 1064).

Here, Plaintiffs' claims are typical of the claims of the class. As to the two Subclasses composing the Tow Class, all named Plaintiffs claims "emanate from the same legal theory or offense as the claims of the class," *Doran v. Mo Dep't of Soc. Servs.*, 251 F.R.D. 401, 405 (W.D. Mo. 2008), because all named plaintiffs, like all class members, were subject to Calverton Park policies, procedures, and customs which resulted in the unconstitutional towing of their vehicles from private property for alleged municipal nuisance ordinance violations, without adequate pre- or post-deprivation hearing to challenge the towing. The proposed class representatives for the Recovered Vehicle Subclass—Plaintiffs Christina Reise, Alan Miller, and Jessica Smith—like the putative class members, were temporarily deprived of their vehicles and paid fees to both the City and the towing company to have their vehicles returned. Similarly, the proposed class representative for the Non-Recovered Vehicle Subclass—Plaintiff Michael White—like the class members, suffered a permanent deprivation of his vehicle as it was scrapped or sold by the tow yard or otherwise never recovered. In sum, the class members' grievances are based on the same allegations as the named Plaintiffs, satisfying typicality. *See Aquila ERIA Litig.*, 238 F.R.D. at 209.

The same is true of the relationship between the proposed class representatives for the Special Tax Bill Class—Plaintiffs Sharon Jones, Michael White, and Christina Reise—and the putative class members. Both the class representatives and the putative class members were subject to the same City policies and practices which resulted in the payment of an unconstitutional fee through the assessment of the Special Tax Bill which bore no relationship to the costs the City incurred in towing the vehicle and was grossly disproportional to the conduct in question. Because the class representatives' claims are based on the same grievance as the putative class members, typicality is satisfied. *See id.*

### 4.   Adequacy is satisfied

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Jones v. NovaStar Financial, Inc.*, 257 F.R.D. 181, 191 (W.D. Mo. 2009) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982)).

Here, there are no conflicts of interest or other antagonisms between Plaintiffs and members of the putative class members. *See Jones*, 257 F.R.D. at 192. All are individuals with the mutual incentive to establish the unconstitutionality of Defendants' policies and practices and to vindicate their claims.

In addition, Class Counsel has provided fair and vigorous representation for the Class. As addressed above, Plaintiffs are represented by attorneys from ArchCity Defenders, who have experience with Rule 23(b)(3) class actions challenging deprivations of constitutional rights, particularly as it relates to municipal practices that result in unconstitutional fines and fees. *See White v. Martin*, No. 02-4154-CV-C-NKL, 2002 WL 32596017, at *10 (W.D. Mo. Oct. 3, 2002) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action."); Ex. 7, Strode Decl. ¶ 5.

### 5.   The Rule 23(b)(3) requirements are satisfied

Finally, the proposed classes meet the requirements of Rule 23(b)(3), which authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Claxton*, 2015 WL 3648776, at

*4; Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Both aspects of Rule 23(b)(3) are met here.

### a.  Common questions of law and fact predominate

Predominance only requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Where common evidence makes a prima facie showing of defendant's liability, predominance is satisfied. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1020, 1029 (8th Cir. 2010). "The fact that some individual questions will be involved in the case does not preclude a finding that the common issues will predominate." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (2004); *see also Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 199 (D.N.J. 2014) ("That common issues must be shown to predominate does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other." (internal quotations and citation omitted)). Nor will differences among class members with respect to damages destroy predominance. *Simpson v. Boeing Co.*, 27 F. Supp. 3d 989, 995 (E. D. Mo. 2014). The "fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe*, 224 F.R.D. at 458.

Additionally, the predominance inquiry here must account for the fact that certification is sought in a settlement-only context. *Amchem Prods.*, 521 U.S. at 619 ("Settlement is relevant to a class certification."). "[C]ourts are more inclined to find the predominance test met in the settlement context," because a settlement "obviates the difficulties inherent in proving the elements of varied claims at trial[.] *In re Flint Water Cases*, 499 F. Supp. 3d 399, 424–25, 430–31 (E.D. Mich. 2021) (cleaned up). "[I]ndividual issues relating to causation, injury and damage

also disappear" within a settlement context "because the settlement's objective criteria provide for an objective scheme of compensation." *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Penn. August 28, 2000); *Hill v. Cnty. of Montgomery*, No. 9:14-cv-00933 (BKS/DJS), 2020 WL 553142. at *4 (N.D.N.Y. Sept. 15, 2020) ("This concern [about evidence regarding individualized damages], however, is absent where, as here, there will be no trial and the parties have overcome the issue of individualized damages through their proposal to measure and calculate damage calculation based on the length of time each class member spent in Montgomery County Jail."); *see also Newberg and Rubenstein on Class Actions § 4:63.*

In both classes, common issues predominate. As discussed in Section 5.A.2, *supra*, a set of common questions applies to the Tow Classes and Special Tax Bill Class. Common evidence adduced in response to these questions would make a prima facie showing of defendant's liability to all class members. *See Avritt*, 615 F.3d at 1029. These common questions demonstrate that Tow Class Members and Special Tax Bill Class Members seek to remedy common grievances about the City's uniform towing practices and fine practices, respectively. *See Carpe*, 224 F.R.D. at 458.

Moreover, these overriding questions focus on Defendant's conduct—not on Plaintiffs'— and concern the core question of liability, and thus predominate over any individualized questions. *See In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003) ("[C]ommon issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members[.]"); *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 569 (D. Minn. 2003) ("The predominance inquiry focuses primarily on common questions regarding liability." (citing cases)).[6] Although damages may vary among class members, such differences do not destroy

---

[6] *See also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("[T]o determine predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." (citing cases); *Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164, 175 (E.D.N.Y. 2001) (inquiry that "necessarily focuses on defendants' conduct, that is, what defendants did, rather than what plaintiffs did" predominates over individual

predominance. *See, e.g.*, *In re Bisphenol-A Polycarbonate Plastic Products Liability Litigation*, 276 F.R.D. 336, 345 (W.D. Mo. 2011). The objective scheme established by the Settlement Agreement further obviates any remaining concerns that individualized damages present. *See Hill*, 2020 WL 553142, at *4.

### b. Class treatment is superior to other methods of adjudication

Resolution through a class-wide settlement is the superior way to proceed with the Classes. Rule 23(b)(3) provides four factors that suggest class-wide resolution is superior: "(1) the class members' interest in individual control of case prosecution or defense; (2) the extent and nature of any litigation a class member may have already begun; (3) the desirability, or lack thereof, of concentrating the litigation of the claims in this forum; and (4) the potential difficulties in managing the class action." *Claxton*, 2015 WL 3648776, at *5 (quoting *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 489 (W.D. Mo. 2010)).

First, members of the Classes have little interest in individually controlling separate lawsuits and settlement given the relatively small individual economic injuries involved, and those that have such interests can choose to opt out of the Settlement. Aggregate litigation is therefore indispensable to the protection of citizens against the alleged unconstitutional policies and practices by Defendants.

Second, it appears that no individual Class Member has chosen to commence litigation concerning this controversy except through class litigation, further suggesting that a collective action is indeed the superior method of recovery.

Third, concentration of the Class Members claims to this litigation saves countless judicial resources should these remaining class members wish to pursue their legal remedies within this

---

questions (citation and internal quotation marks omitted)); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650 (C.D. Cal. 1996) (common questions predominated where claim focused on defendant's conduct, not defective product's effect on plaintiffs).

forum, as would be appropriate. There is no question that this Court has subject matter jurisdiction over the claims alleged in this case and personal jurisdiction over the Parties, and that personal jurisdiction extends to members of the Class under the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the notice that will be provided to this class is constitutionally sufficient. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

Fourth, there will be no difficulties in managing a class trial, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Therefore, the Court need not consider manageability as part of its settlement approval calculus.

A class action here "avoid[s] potential duplicative litigation and . . . save[s] the parties time and legal costs to adjudicate common legal and factual issues," and thus, is superior to other available methods for fairly and efficiently adjudicating the controversy." *Claxton*, 2015 WL 3648776, at *5. Resolution of all claims, which arise from a common course of conduct, through a class-wide settlement including the Tow Class and Special Tax Bill Class, is a practical and proper course of action. Plaintiffs therefore respectfully request that the Court provisionally certify the Classes for settlement purposes only.

### B. The Court should approve the proposed form and method of Class Notice

#### 1. The proposed Class Notice provides for the best notice practicable under the circumstances

Under Rule 23(e), the Court must direct notice in a reasonable manner to class members who would be bound by the proposed class settlement. "Notice of a settlement proposal need only be as directed by the district court . . . and reasonable enough to satisfy due process." *DeBoer*, 64 F.3d at 1176. The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 WL 3671053, at *8 (quoting

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999)). "There is no one 'right way' to provide notice as contemplated under Rule 23(e)." *Id*.

Here, as described in the Settlement Agreement, the Parties propose that Notice be provided by Postcard Notice, Long Form Notices, and Publication Notice to all persons identified as potential owners of the towed vehicle and potential occupants and owners of the property from which the vehicle was towed. *See* Settlement Agreement, Section VIII.

## 2. The proposed form of Class Notice adequately informs Settlement Class Members of their rights

Any notice provided to Settlement Class Members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on Class Members. *See* Fed. R. Civ. P. 23(c)(2).

The proposed Notice here describes the material terms of the Settlement, the relief it will provide, the date, time and place of the final-approval hearing, procedures and deadlines for opting out or objecting, and explanation that if the class member does not opt out, he or she will be bound by any final judgment in this case, including a release of claims. *See Settlement Agreement* ¶¶ 7, 22, 33. The proposed notice also advises Class Members that Plaintiffs' counsel have pursued the lawsuit on a contingent basis and have not received payment of fees or any reimbursement of their out-of-pocket costs. The proposed notice further advises Settlement Class Members that Plaintiffs' counsel will apply to the Court for an award of fees and costs, and for Service Awards to the Class Representatives. The form of notice proposed therefore complies with the requirements of Fed. R. Civ. P. 23(c)(2), and due process.

The notice is accurate and informs Settlement Class Members of the material terms of the Settlement and their rights pertaining to it. The Court should therefore approve the proposed Notice and direct that Notice be disseminated as proposed by the Parties.

## VI.     CONCLUSION

For the reasons stated above, Plaintiffs request that the Court: (1) preliminarily approve the Parties' proposed class action Settlement; (2) provisionally certify the Tow Class, including the Recovered Vehicle and Non-Recovered Vehicle Subclasses, and the Special Tax Bill Class for settlement purposes only; (3) appoint Maureen Hanlon, Brianna Coppersmith, and Lee Camp of ArchCity Defenders as Class Counsel; (4) name Plaintiffs Reise, Miller, and Smith class representatives for the Recovered Vehicle Class, Plaintiff White class representative for the Non-Recovered Vehicle Class, and Plaintiffs Jones, Reise, and White as class representatives for the Special Tax Bill Class; (5) approve the proposed Notice and direct that it should issue; (6) set the date and time of a Final Approval Hearing; and (7) grant such other relief as the Court deems necessary and appropriate.

Date:   October 6, 2025

Respectfully submitted,

**ARCHCITY DEFENDERS, INC.**

By: /s/ Brianna Coppersmith
Maureen Hanlon, #70990MO
Brianna Coppersmith, #75515MO
Lee Camp, #67072MO
440 N. 4th Street, Suite 390
St. Louis, MO 63103
Telephone: (855) 724-2489
Facsimile: (314) 925-1304
mhanlon@archcitydefenders.org
bcoppersmith@archcitydefenders.org
lcamp@archcitydefenders.org

*Attorneys for Plaintiffs and the Classes*